Solomon Chamu versus the U.S. Attorney General. We have Michael Vasteen for the petitioner and Timothy Hayes for the Department of Justice appearing remotely. Mr. Vasteen, if you are ready. Michael Vasteen, St. Thomas University College of Law Immigration Clinic for Mr. Chamu, joined by co-counsel Sui Chung, who is at the table. May it please the Court. Mr. Chamu was detained in removal proceedings and wanted to apply for the discretionary relief of cancellation of removal based on his lengthy period of being undocumented in the United States and by showing that his family would suffer exceptional hardship in the event of his removal. He did not get a chance. He was ordered removed without any consideration of his factual circumstances based on his Florida drug conviction. So this appeal presents two questions regarding whether the Florida crime, his offense of possession of cocaine should count to disqualify an immigrant from discretionary relief. The first question is what is cocaine in Florida and how does it compare to a federal standard? And the second is whether an offense needs to have a mens rea component in order to cause immigration consequences as a controlled substance offense. The statute here sets out a system in 8 U.S.C. 1182. It says that a foreign or state offense can only trigger an immigration offense if it, quote, if it involves a drug, quote, as defined at 21 U.S.C. 802. Congress cannot be clear. We have to look at those definitions and see how a state definition would compare. And state overbreath in these cocaine definitions turns out to not be uncommon. The 7th Circuit recently had to take up this issue in a case called Ruth that we mentioned in the briefs. Why? Because there in the 11th, sorry, in the Illinois statute that was issued, the state offense included position isomers of cocaine, whereas the federal definition only includes optical and geometric isomers. With the help of an expert, they explained that that was a distinction. The Illinois statute was overbroad in its enhancement. Around the same time, the 5th Circuit took up this issue in which the government conceded that the Texas cocaine definition was overbroad. Similarly, for the same reasons relative to the federal definition. There, under a different test, a different standard and applicable here, that immigrant, Mr. Alexis, lost. But again, the distinction in the types of isomers that are considered cocaine was clearly presented. In trial courts within the 2nd Circuit, the same thing has happened for reasons that are pretty much identical to the Florida statute. There, the New York courts are finding that the New York definition is also dissonant with the federal definition. It's overbroad. We cited some trial cases there in our brief, including Tavares. I have a question about this. One of the issues that I at least see in the case is the question of whether this is an assessment that is made purely on the basis of the statute. You just look at the text of the statute, or whether we need to know as a factual matter whether in reality there is cocaine that would match the Florida definition, but not the federal definition. What do you say about that problem? I guess you're kind of getting at what's realistically prosecuted here in Florida. I would say that the, as we know from police reports, substances are field tested for the presence of cocaine, and that's the end of the inquiry. The element is indivisible in Florida. If the state can merely prove that it related to cocaine, however we define it, the state and the law enforcement doesn't investigate further, the state does not prosecute with any more specificity. It's really irrelevant. I think as a practical matter, that's because the chromatography equipment that would be required to devise the exact isomer that was involved, it's expensive, it would be time consuming. We see from tens of thousands of examples in Florida that the conviction merely relates to cocaine, as opposed to the specific type of species of cocaine, and there's dozens of them that actually exist in nature and in the labs. And so is there, I guess my question then is does it matter, and then I guess as a factual matter what do you think the answer is, but does it matter whether there is cocaine that is regularly, that would be prosecuted, regularly prosecuted, that would match one definition and not the other? So that's kind of one question, and then the other is what do you think the answer actually is? Okay. What we know is a matter of science and reality that there are isomers of cocaine that states have criminalized, that for some reason the federal government has not. Like the New York cases have turned on the presence of the possibility of scopolamine or phenotrol, and these are found to be isomers that are, they're non-geometric isomers of cocaine, it goes into the chemistry of how the molecules are assembled, but they exist. New York knows they exist, just like in Texas they knew that non-optical, non-geometric isomers existed because they're such things as positional isomers. And you and I don't talk about this every day, I assume, because I assume you're not a chemist in your former life, but it's just like when we talk about crimes like theft offenses, could it have been a temporary appropriation of Florida offense? Sure it could, this court has held that. But it's the same thing, you just look at the language of the statute. In this case, to make sure it was clear, we got the help of a chemist to say Florida does not use the terms optical and geometric isomers. It says what's illegal here in Florida is a bunch of things, including stereo isomers of cocaine. And so our chemist, Dr. Heller, said, well, what that means is you've got matches of federal, these are all subsets of stereo isomers. And then he said, but there's non-geometric isomers as well, and that's where we find our dissonance. And that's the exact scenario that has been rolling out within the Second Circuit regarding the New York statute. Are there non-geometric isomers in theory or in actuality? Have your experts identified any actual non-geometric isomers? Yes, I mean, we know that they exist, such as the two that I just cited, scopolamine and phenetrol. And... Let me just ask you, you just said some words that are nonsense to me for the reasons we discussed earlier. What does that mean when you say that those are isomers that exist that would fit the one definition but not the other? Okay. Because the way that the types of drugs is constructed, it's in the cocaine family. It is a species of cocaine, but the federal government and the CSA, and again, it has to be a drug as defined at Section 802 of Title 21, the federal government has said optical and geometric isomers. The states, of course, they're free to do what they want, and for a variety of reasons, Florida has chosen a different description. And our jobs would all be easier if they treated, if all these governments treated cocaine like methamphetamine. Methamphetamine, every time someone dreams up a new isomer and sells it, they win in their jurisdiction because it's not on the drug list yet. And the legislature acts and they name that chemical and put it on the drug list. For some reason, the federal government and the state governments just list cocaine generically with this broad description, which has opened this Pandora's box, which is Florida chose not to have the same description as the federal government, and there's consequences for that. But you've given us a declaration of Dr. Heller, who is your expert, and he gave, and correct me if I'm wrong, he gave specific examples of non-geometric stereoisomers, specifically ethanol and dimethyl ether, but this is about cocaine, and as far as I can tell from his testimony, he did not provide, you gave two examples today, but he did not provide a single example of a non-geometric stereoisomer of cocaine. So have you failed to meet your burden if your expert has not identified any such isomer in reality? So we happen to know factually from some of the other litigation around the country that these two were named, and you're right, Dr. Heller did not name it. He described the existence of non, sorry, non-geometric isomers that therefore would meet the burden, just one second, I thought I had the quote here, where he specifically says that, but I don't think it's a matter of meeting the burden, because, I mean, when he says, because the question is are there stereoisomers of cocaine that are non-optical and non-geometric isomers, he clearly says that in the contrary. And so when the BIA, I realize I'm almost out of time. But we're looking at this case, not other cases, and based on the record of this case, your expert has not identified one such isomer occurring in nature, correct? No, he's, I guess I can find it while the government is arguing and bring it to your attention, he specifically said that these do exist. The government has seized upon this and says, he didn't say, you know, explicitly what those were, but when he said that those, he specifically identified this niche in which there is, you know, a smaller universe of species of cocaine that do exist in science. They exist in science, but are. And in reality, and we happen to know what some of those names are, that's what I was sharing with your colleague. I realize there's only 13 seconds left, so I wanted to preserve our other argument, which is regarding the mens rea element, which is, of course, missing from the Florida scheme. And we argue, as we did in the briefs, that that also creates dissonance with the federal definition. And Congress couldn't have assumed that permanent bars to immigrating to the country could attach to a state or foreign conviction in which a government didn't have to prove culpability on top of the, by a defendant in one of those governments, but I'm over. So I'll pause and reserve the rest. And you have reserved five minutes for rebuttal. So thank you, Judge. Mr. Hayes. May it please the court. Timothy Hayes on behalf of the Attorney General. This case presents the question of whether petitioner has met his burden to establish that a conviction for possession of cocaine and violation of Florida law does not relate to a federally controlled substance to qualify him for relief from removal. The agency properly concluded that petitioner did not meet his burden in this case. I'm turning to the central issue, which is whether there is a realistic probability that Florida's definition of cocaine is broader than the federal one. That hasn't been shown in this case. We know from this court had no problem concluding once it found that the drug schedules were divisible, that possession of cocaine under Florida law relates to a federal controlled substance. Granted, it did not. I think you're about to say what I was going to ask. Did that case discuss the definition of cocaine? Because I think really that's the question that we're dealing with here. Yeah, I was just going to get to that. I was, it did not, it did not your honor. So to the extent that the court wants to reach issue and narrow that holding, I understand that. Petitioner has not established that Florida's definition is broader with this affidavit. And I think that that's the crux of the issue. The affidavit does speculate that there could possibly be non-geometric isomers of cocaine that a person could possess and theoretically could be prosecuted under Florida law for, but we have no evidence of what that isomer is. There's no discussion of the record of what that isomer is. I think part of the problem is this expert declaration was submitted on administrative appeal to the board. It was not actually raised to the immigration judge who is the fact finder and removal proceedings. So in a way the agency never really had much to go on factually because it wasn't presented to the last minute. I will point out that as far as the use of the word stereoisomer, this court in Pfeiffer actually said when it was dealing with a separate drug issue, but it said optical and geometric isomers, which are mentioned in the DEA's definition of isomer are subtypes of stereoisomers. So some courts have actually said that stereoisomers encompass all geometric and all optical isomers. I wouldn't go so far as to say that's a matter of fact, but statutorily speaking, courts have used those terms interchangeably. So that's why it's really critical that we have expert witness testimony explaining whether an isomer actually exists. And then the separate question of whether someone can actually possess cocaine that has an isomer that arguably could fall outside of the federal definition. We don't have that in this case. And since the burden, because this is a relief from removal case, the burden is on the petitioner to prove that it falls outside the definition. He has not met his burden in this case. Mr. Hayes, let me ask you a question. Let's just assume right now for the sake of argument that Shamu is correct and that there is a non-geometric stereoisomer of cocaine out there. It's out there and occasionally it makes its way into the mix. Can you explain to me why that would not be facial over breadth under Ramos? Well, I think, I think Ramos was dealing with a particular case where the statute was just reading the statutory definitions and reading the relevant case law. It was clear that that was not over broad. I think in these kind of instances where we have actual questions, I mean, as I said, the court in Golian just assumed categorically that it applied. I don't think Ramos would apply in a case like this. I think you would have to show something more than a theoretical possibility. And I would point to the Ninth Circuit's case with methamphetamine. The Ninth Circuit has case law similar to Ramos, where they say if it's over broad on its face, then that's the end of the inquiry. But even with methamphetamine, when they had this isomer issue, they backed down from that because they weren't sure if it was realistically probable that someone can actually possess an isomer that fell outside of the federal definition. On the flip side of that question, another important point in this case is the actual generic definition here is any law of a state or the federal government that relates to a federally controlled substance. The word is relates to which is a loosening kind of phrase and the Supreme Court has recognized this in various case law. So even if we have the possibility that there is an isomer of cocaine out there, and even if we have the possibility that someone can possess this isomer of cocaine that is not federally controlled, it could be mixed with isomers that are federally controlled. And in that case, something like relates to that would be enough. In my opinion, it relates to a federally controlled substance, even if part of what they contain does not contain all the isomers that are optical or geometric. I understood from I understood from Mr. Vestine that the Florida is not does not have the level of testing required to show on a regular basis, which precise isomers are the cocaine is made up of? Is that your understanding as well? Well, I'm not real familiar with Florida, Your Honor, but but I would I would agree with that. The Fifth Circuit had a similar issue. They raised that issue in the Lexus case, which is cited in the briefing as well. It's sort of a catch 22. I mean, if the labs aren't typically set up for this, it's kind of hard to prove, prove it. But you know, there's two answers to that. One is a broader answer in the Fifth Circuit sort of alluded to it, but we've seen it recently in the Supreme Court case of pretty versus Wilkinson. It's a burden of proof issue. So Congress allocated the burden of proof for relief from removal on the alien. So difficulty in proving it, unfortunate as it is, it's on the non citizen shoulders. This might be a different issue if it was a removal ground be charged, but Mr. Shamu was actually ordered removed as entering without inspection. So he's not being removed because of this direct eviction. He's being his application for relief from removal is pre terminated. The second answer to that question is I don't think that the board in his particular case went so far as to say we want to see an actual prosecution. I think they could have, but they didn't. All they asked for was that his expert witness affidavit actually named an isomer that does not fall within the Florida definition. And he didn't do that. This may have been a different case if he did, but he did not. And that was kind of the crux of the board's decision on the point of whether the isomers actually align or not. If he, if he said that there are such isomers, but didn't name them, why, why is the burden of proof actually naming them rather than simply showing that they exist? That goes back to the Duenas Alvarez. It's it has to be more than a theoretical possibility. And as we're discussing with the Ramos case, this isn't the kind of statute where you can throw out a theoretical possibility and say it's unambiguous on its face. I'm not saying a theoretical possibility. I'm saying in the same way that if I say, I have a sister, right? That's, that's asserting a fact, even if I don't say her name is Margaret, right? What's the, why is this different than that sister Margaret example, right? If he says, there are, there are these isomers, but doesn't say comma and their names are this, why, why is that not sufficient? Well, there's a burden of proof issue. And I think a fact finder could say that just naming the fact without backing up at some support as to why that fact exists or not is insufficient. You have to carry your burden and you didn't carry your burden. There's a lot of facts you can name that you have to prove at some point. And this is, you know, I'm not saying you, you, well, Duenas Alvarez, you pretty much do have to prove, you have to prove that it's more than theoretically possible. And I think in your example, naming that your sister exists is, you know, I have to assess your credibility and whether that's true or not, it might not be enough. You'd have to say more as to, well, you know, I've lived with my sister for 14 years, et cetera, et cetera, et cetera. Yeah. And so that goes to your point, which is about the affidavit was, was filed in front of the board, as opposed to the immigration judge. Is there, how, how should have this been handled, I guess, so that there was a record for us that answered these questions that we have about this? Well, the board could have really addressed it in one of two ways. I think the way it addressed it and what's up here is sufficient because of the burden of proof, but the alternative would have been for him to move to remand and to place it before the immigration judge as a disputed factual issue. He might not have prevailed though, because one of the criteria for a motion to remand, at least until the recent regulations, but we don't have to go there because they've been, there's an injunction on them. But one of the criteria for motions to remand is the evidence had to be shown to be previously unavailable. And I think Mr. Shamu would have a hurdle there because there's no, there's no reason why this affidavit could not have been presented earlier. There isn't, it is not as if this isomer has magically appeared in the last few months or between the time of the immigration judge's hearing and the appeal before the board. So I think even if he moved to remand, the board probably would have denied it saying the evidence wasn't shown to be previously unavailable. However, if the court does have, you know, continuing concerns and, you know, even though the burden of proof is on him, in that instance, it would be better to remand this to the agency for further fact finding rather than deciding it, you know, on the record that we have here. Could you address, could you address the second point that he raised? I was just regarding mens rea. Yeah, I was going to go into that and ask, certainly your honor. Petitioner has not established that Florida's mens rea is broader than the federal definition because Florida does not require the prosecution to actually prove the defendant had knowledge of the illicitness of the substance possessed. As I was discussing earlier, the generic definition here is relating to prior to the intermissibility grounded issue in 1986, effective in 1986, but prior to 1986, Congress actually said that you can only be charged if it was illicit possession of a controlled substance. They deliberately dropped the word illicit from the generic definition, which indicates that Congress did not expect a mens rea of a state statute in order to count as a controlled substance violation. The board also analogized it to case law, which is matter of LGH, and this court took it up and I apologize if I butcher the name, I think it's Shazilme versus US Attorney General. That involved a different removal ground that was an aggravated felony removal ground of illicit trafficking. And even there, which arguably that ground is much stricter than this ground, which is relates to the court said that the case law and its analysis of the mens rea is correct. The board was correct in saying that it could hold that the generic definition does not require that the state mens rea have knowledge of the illicitness of the controlled substance. The other point to that is the Supreme Court has addressed in a different context, admittedly, a different context, and that's the Schuller case. They have addressed Florida's peculiar mens rea requirement, flipping it to an affirmative defense, and their Justice Ginsburg said that the concerns seem to be overstated. And the same kind of logic applies here. I mean, she was talking about Clause 1A, and this is, I believe, Clause 6A, but the jury instructions are very similar. In the criminal case, if the defendant is alleging that they do not have knowledge of the illicitness of the substance, all they have to do is raise that as a defense, and then the jury has to find, beyond a reasonable doubt, that he did have such knowledge. So, it wasn't really very concerning to the Supreme Court that the mens rea of illicitness was dropped and made an affirmative defense. And I don't think it's very disconcerting in this instance because, again, we have a generic definition that the board permissibly interpreted, and it's relating to a federally controlled substance. It was not required to define that has to include illicit knowledge. And unless your honors have further questions, we ask that you please deny the petition for review. Thank you, Mr. Hayes. Mr. Vasteen, you have five minutes left for rebuttal. I've got a question before you get started. Based on what you said about testing, how confident are you that whatever testing Florida does is capable of picking up these isomers that are not counted under federal law but that are counted under Florida law? Your question is whether it could be tested? I'm sorry, Judge? Well, right. So, Florida, you indicated, does not have testing to isolate and identify the particular isomer of the substance that it's seeing if it's cocaine. Do we know that their testing picks up these types of unique isomers that are covered under Florida law but not federal law? There is testing. Just Florida law doesn't do that because they don't have to. Right. But what do they do is my question. They merely do a field test for the presence of cocaine broadly without any discerning what species or of cocaine is actually involved in the offense. So it would theoretically pick up these unique forms of cocaine? Everything would hit as positive, including those that are outside of the federal definition. It would be up to the feds to test and find, to distinguish between isomers that were cocaine under the federal definition and those that were not cocaine under the federal definition, right? Yes, I think I'm following. So if they're a federal prosecution, it would matter and the state prosecution wouldn't matter one way or the other. And I have no idea whether they use the same kit from the same court, whether they're testing the same thing, but it's whatever is sufficient for them to test and then try and mostly get a guilty in their respective jurisdictions. So I'll try to quickly run through a series of rebuttal points and obviously try to answer all of your questions. Before the issue of evidence, the agency essentially rebooted this case when they called for supplemental briefing and amicus briefing. That's when we submitted the more detailed explanation of what we had already been arguing all along in the case at the trial level, including Dr. Heller's declaration. They also got amicus briefing, including one from the immigration clinic at George Washington University's law school that addressed the same issue, the fact that these isomers do exist that are beyond the federal definition. It's not that they didn't consider it. The BIA considered these and they rejected it. So yes, I think this court should really look at that aspect critically. Sure, you could remand for further fact-finding and that would be fine. We had a parallel case to this one where the government did remand based on this move for remand over our objection regarding the same expert affidavit. That's not what they did here, but obviously that's the way the case could be resolved. I think the government's maybe Judge Branch fleshed it out regarding Guillen. Guillen has no bearing on what is cocaine in Florida. It just says, you name the drug in a Florida prosecution and then beyond that, the present debate launches. Does Guillen affect your mens rea argument? I understand your position on the, it doesn't address this divisibility of the cocaine definition, but doesn't it basically say that the generic Florida statute matches the federal? No, respectfully, it just says we notice which drug on the Florida CSA list essentially is the one that was involved in the crime. It doesn't charge generically with merely violating the list. You violated it as related to a substance that we're going to have to name in the indictment. Yeah, I guess my point, and I hope you get some more time to make your points, but I just, wouldn't the result have come out differently in Guillen if your mens rea argument were correct? That wasn't central to it. Schwozomay, for example, was the, that was my case as well. So we'd lost that because there the panel decided to defer to a matter of LGH in which the board had cited a 1922 case approvingly from the U.S. Supreme Court card, the U.S.B. balance, in which the old situation for taxing people that are using cocaine does not have a mens rea element, and the court ignored 1954 to now in which the Supreme Court had consistently read mens rea elements in, but nonetheless it deferred under Chevron step two. Post-Schuler, we know that the only time you don't do the generic crime analysis is when there's a diluting word, geez, Mr. Hayes, I think that's what Mr. Hayes described it, such as involving. However, Mr. Hayes is totally incorrect to say relating to is a diluting word consistently, and we laid it out in the briefs in the dozen or so spots in the INA that uses the words relating to a certain type of offense. That underlying predicate offense is subjected to the generic crime analysis. It's done throughout the aggravated felony definition. This court has done it, I believe, in a case called Martinez that we cited in the briefs. So that's, we have to engage in the categorical approach in the generic offense, and again, mens rea would be the prevailing norm, because that's the way criminal law works. You have to have a culpable mind in order to be criminal. That's a consistent principle. I see I'm over my time. Thank you so much, judges. I appreciate it, and we rest our case. I've actually got one more question. Oh, thank you. The presiding judge will allow it. Of course. One thing that I'm still trying to think through on these definitions, these derivatives, is it your client's burden to show that anyone actually, not only that it's possible to construct those, but that anyone actually does that? Right? It's possible, as the expert report showed, to create these particular derivatives, but do you need to show that anyone does so? Okay. This is a big question. I think the government misses the point on, because Duenas-Alvarez says where there is statutory overbreath on its face, you don't have to show an exemplar of prosecution. Here, when the Florida statute uses the word stereoisomers, and we had to go and figure out what stereoisomers means, but that on its face created the overbreath, so you don't have to show an exemplar of prosecution. You don't get stuck in the catch-22, which happened in the Fifth Circuit. The Eleventh Circuit is the majority view, because of Ramos. There's only one circuit that's gone the other way, which is the Fifth, which says we know you're never going to be charged specifically on your isomer, and you're still going to lose, because we require you to show which isomer you were convicted under, and that was the panel, and Alexis was highly sympathetic to that. They said we have to follow our prior precedent, just like this court has to follow Ramos. Thank you. Thank you very much, all. Thank you, both. We have your